IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER DORAN, | : | No. 3:13cv1756 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner | : | |
| of Social Security Administration, | : | |
| Defendant | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Plaintiff Peter Doran's (hereinafter "plaintiff") appeal of the Defendant Commissioner of Social Security Administration's (hereinafter "defendant") denial of his applications for Social Security Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income Benefits (hereinafter "SSI").  The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff was born October 24, 1961.  (Doc. 12, Administrative Record (hereinafter "R.")  at 122).  He was self-employed in the areas of plumbing, heating, and air-conditioning, and also worked in the plumbing wholesale industry.  (R. at 72-73).  The plaintiff worked for twenty-eight (28) years before his alleged disability commenced.  (R. at 179).

On January 29, 2006 plaintiff was injured on the job when a large metal tank fell on his head, fracturing his skull.  (R. at 213).  Plaintiff testified that he continued working, albeit with some difficulty, until October 2009.  (R. at 38-39).  On March 31, 2010, plaintiff filed an application for DIB and SSI, claiming disability as of October 1, 2009.  (R. at 83).

Plaintiff's claims were initially denied on September 20, 2010, and plaintiff requested a hearing on November 2, 2010.  (Id.)  The Administrative Law Judge (hereinafter "ALJ") conducted a hearing on September 26, 2011, at which plaintiff, his friend and co-worker George C. Welliver, and Josephine A. Doherty, an impartial vocational expert, appeared and testified.  (Id.)  In a decision issued November 18, 2011, the ALJ rejected plaintiff's claim, finding that plaintiff was not "disabled" and thus not entitled to DIB or SSI.  (R. at 83-93).  Plaintiff requested review by the Appeals Council on December 13, 2011.  (R. at 6).  The Appeals Council denied plaintiff's request on April 25, 2013.  (R. at 4).  Plaintiff initiated the instant appeal by filing a complaint with this court on June 6, 2013.  (Doc. 1).

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In reviewing a Social Security appeal, this court must determine whether "substantial evidence" supports the ALJ's decision. See, 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d

Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'"  Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion.  See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent

an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).   The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates SSI and DIB claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.

20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  A plaintiff's residual functional capacity is "the most [the plaintiff] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).[1]

In applying the five-step sequential analysis in the instant case, the ALJ found the following: Step 1- Plaintiff has not engaged in substantial gainful activity since October 1, 2009 (R. at 85); Step 2- Plaintiff has the following severe impairments: status post closed head injury, cognitive disorder, and depression (Id.); and Step 3- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 86).

The ALJ next determined plaintiff has the residual functional capacity to: perform light work . . . limited as follows: no overhead work and simple repetitive tasks not involving direct customer service.  (R. at 87).  Then the ALJ proceeded to Step 4 of the sequential evaluation and concluded that plaintiff is unable to perform any past relevant work.  (R. at 91).  Josephine A. Doherty, an impartial vocational expert, testified at the hearing regarding jobs someone with plaintiff's limitations, as defined by the ALJ, could perform.  Based upon the vocational expert's testimony,

---

[1] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

the ALJ concluded that considering the plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform.[2]  Such jobs include mail sorter, digital processor, and assembly worker.  (R. at 92). Thus, the ALJ found that the plaintiff is not disabled from employment, but rather, "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.)

Plaintiff's appeal alleges that the ALJ erred in the following three ways: 1) The ALJ failed to list plaintiff's neck injury as a serious impairment that meets listing 1.04A; 2) The ALJ failed to properly consider plaintiff's complaints, or, in the alternative, the ALJ's decision concerning plaintiff's residual functional capacity was not based on substantial evidence; and 3) The ALJ improperly concluded plaintiff was capable of engaging in light work with moderate restrictions.  We will discuss these issues below.

**I. Plaintiff's Neck Injury**

As noted above, the ALJ found that plaintiff had the following severe impairments: status post closed head injury, cognitive disorder, and

---

[2]  Plaintiff was forty-nine (49) years of age at the time of the hearing. (R. at 91).

depression. (R. at 85). Plaintiff argues that the ALJ erred in not including plaintiff's neck injury when listing plaintiff's severe impairments and in not finding that plaintiff's neck injury meets or medically equals the severity of impairment 1.04A, as listed in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.925, and 416.926). The court disagrees.

First, the ALJ discussed the objective medical evidence regarding plaintiff's neck injury. The ALJ's decision addressed plaintiff's neck pain, relying on both testimonial and documentary evidence in doing so. (R. at 89-91). The ALJ noted that plaintiff asserted that "progressively worsening neck pain and hand tremors rendered him disabled beginning on October 1, 2009." (R. at 89). The ALJ found, however, that the evidence from "clinical examination and diagnostic testing fail to corroborate the severity which could reasonably be expected to cause the alleged degree of symptomatology or functional limitation." (Id.)

In reaching this conclusion, the ALJ considered, and his decision discussed, treatment records from plaintiff's primary care providers at King Medical Care, which document plaintiff's repeated descriptions of his neck pain as "moderate and intermittent." (Id.) He noted that, at times, plaintiff

9

presented with moderate distress, tenderness to palpation, limited range of motion of the neck, and muscle spasms of the neck and thoracic spine**.** (Id.)  The ALJ further considered evidence of pain management treatments, which included trigger point injections that plaintiff reported to his doctor provided relief.  (R. at 89 (citing R. at 551-79)).  Additionally, the ALJ further considered diagnostic imaging, which he found documented mild to moderate conditions.  (R. at 89).  Clearly, the ALJ considered both the plaintiff's subjective complaints and the objective medical evidence regarding plaintiff's neck injury, and found that it was not severe.  Based on the Court's careful review of the ALJ's decision, that determination is based on substantial evidence.

Second, substantial evidence supports the ALJ's finding that plaintiff's neck injury did not meet listing 1.04A, Disorders of the Spine.  To satisfy listing 1.04, plaintiff must show a specific disease of the spine, along with evidence of nerve root compression, characterized by **all** of the following: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; and (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.  20 C.F.R Part 404, Subpart P, Appendix 1.

Plaintiff fails to identify evidence of the third element of listing 1.04A, motor loss.  The plaintiff bears the burden of proving that his alleged disability satisfies all the required elements of a listed impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting that the burden of proof begins with the plaintiff, and shifts to the defendant only at step five of the analysis).  Further, in the record before the Court, multiple medical records report that plaintiff's muscle strength was normal.  (See, e.g., R. at 294, 297, 300-301, 304-5).  Because plaintiff did not prove all the elements of listing 1.04A as required, the ALJ was correct in finding, after reviewing all of the listed impairments (see R. at 86), that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of listing 1.04A.

**II. Residual Functional Capacity**

At the hearing before the ALJ, the plaintiff and his co-worker, Mr. Welliver, testified as to the severity of plaintiff's impairments.  The ALJ found this testimony not credible to the extent that their statements were inconsistent with the ALJ's residual functional capacity assessment.  (R. at 89).  Plaintiff argues that the ALJ erred in this finding, and that he failed to give proper weight to the evidence provided by plaintiff's treating

physician, Dr. Seidenberg. He further argues that the ALJ's conclusions as to residual functional capacity were not based on substantial evidence.

The ALJ did consider plaintiff's testimony at length, as well as that of Mr. Welliver. (See, e.g., R. at 88). The ALJ determined, however, that the objective medical evidence failed to support their testimony. (R. at 89). In making this determination, the ALJ cited to numerous sources, including records from Dr. Seidenberg, plaintiff's treating physician. (Id.) The decision notes that these records reflect complaints of radiating neck pain, upper extremity numbness, and low back pain, as well as diagnoses of chronic pain syndrome and cervical radiculitis associated with the 2006 accident. (Id.)

Contrary to plaintiff's assertion, the issue of how much weight the ALJ afforded to Dr. Seidenberg's opinions is unavailing, as Dr. Seidelberg provided the very evidence the ALJ relied upon in making his credibility determination. Plaintiff argues that no other medical evidence contradicts that provided by Dr. Seidenberg, but it was Dr. Seidenberg's own reports that noted that plaintiff demonstrated on occasion a full range of motion of the neck, that plaintiff's pain management treatment was effective, and that plaintiff himself described his neck pain as moderate and intermittent.

(Id.) The ALJ's credibility determination was based on substantial evidence.

As noted above, in addition to testimony from plaintiff and Mr. Welliver, the ALJ examined numerous medical records in determining plaintiff's residual functional capacity, including records from plaintiff's treating physician and diagnostic imaging, such as an EMG/NCS study, two MRIs and an x-ray of the cervical spine, and an arterial duplex ultrasound. (R. at 89-90). The totality of the evidence does support the ALJ's residual functional capacity assessment.

**III. Plaintiff's Ability to Engage in Light Work With Restrictions**

Plaintiff's final argument is mainly a restatement of his assertion that the ALJ's residual functional capacity determination was not supported by substantial evidence. Beyond that, plaintiff essentially argues that the ALJ did not sufficiently explain his reasoning for finding that the plaintiff is capable of light duty work with moderate restrictions. We disagree.

As described above, the ALJ relied on substantial evidence throughout his assessment, and his conclusion that plaintiff is capable of light duty work is well-supported by the record. The ALJ referred to the record evidence in stating his determination and the reasons for the

limitations he included in the hypothetical he provided to the vocational expert.  The Court does not find any deficiency in the ALJ's explanations of his finding regarding plaintiff's ability to perform light duty work with moderate restrictions.[3]

**Conclusion**

For the reasons stated above, the Court finds that substantial evidence supports the Commissioner's decision.  Therefore, pursuant to 42 U.S.C. 405(g), the Court will affirm the Commissioner's decision.  An appropriate order follows.

**Date:** 9/17/2014                                    s/   James M. Munley
                                                    **JUDGE JAMES M. MUNLEY**
                                                    **UNITED STATES DISTRICT COURT**

---

[3] Even if there was such a deficiency, it would create no prejudice to the plaintiff, as the decision is well-supported by substantial evidence. Remand for further explication would be improper, as it would not change the outcome of the case, nor add anything helpful to this Court's review of the ALJ's decision.  "Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have not been affected."  Morris v. Bown, 864 F.2d 333, 335 (5th Cir. 1998) (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988).